2014 VT 112

**STATE of Vermont v. Bradley HUGHES**

[109 A.3d 433]

No. 14-356

Present: *Wesley*, Supr. J., Specially Assigned.

¶ 1. October 3, 2014. On August 25, 2014, defendant was arraigned on one count of aggravated domestic assault and one count of domestic assault arising from events on or around Jan. 15, 2014, and two counts of domestic assault arising from events on August 22 and 23, 2014. Defendant was released on conditions, despite the State's request for an order holding him without bail under 13 V.S.A. § 7553a. A weight of the evidence hearing to further consider the State's request was scheduled for August 29, and subsequently rescheduled for September 15, based on the unavailability of defendant's counsel. On September 4, defendant was arraigned on five new charges arising from events on September 3 and 4, including two counts of violating an abuse prevention order, two counts of violating conditions of release, and one count of providing false information to a police officer. At arraignment on the new charges, Judge Howard reviewed the conditions imposed in Docket No. 796-8-14 Bncr and granted the State's renewed request that defendant be held without bail.

¶ 2. At the conclusion of the weight of the evidence hearing held September 15 and 17, 2014, Judge Cohen issued an oral decision ordering defendant to be held

without bail. This appeal followed and a de novo review was held on October 2 before Superior Judge John P. Wesley, sitting by special assignment to preside over the single justice review proceeding as provided by 13 V.S.A. § 7556(d) and Vermont Rule of Appellate Procedure 9.

¶ 3. Defendants may be held without bail under 13 V.S.A. § 7553a when charged with a felony

> an element of which involves an act of violence against another person . . . [and] when the evidence of guilt is great and the court finds, based upon clear and convincing evidence, that the person's release poses a substantial threat of physical violence to any person and that no condition or combination of conditions of release will reasonably prevent the physical violence.

¶ 4. Defendant does not dispute that the evidence of guilt is great in this case, but contends the court's denial of release on conditions was not supported by clear and convincing evidence that his release posed an unavoidable threat of violence. At the outset of the hearing, noting that neither party had filed a memorandum "describing any proposed additional evidence at least 24 hours prior to the hearing" as required by V.R.A.P. 9(b)(1)(F), the undersigned indicated that review would be limited to the record established at the weight of the evidence hearing.*

---

\* At the outset of the hearing, defendant indicated his intention to call three witnesses, although he made no proffer of their identity or the subject matter of any testimony. In response to the Court's query whether permitting further testimony would be consistent with V.R.A.P. 9 or the holding in *State v. Madison*, 163 Vt. 390, 659 A.2d 124 (1995), defendant demurred, indicating his reliance on the legislative findings expressed in 13 V.S.A.

¶ 5. By detailed testimony, consistent with other written statements she made to investigating personnel, the complaining witness established the existence of a two-year relationship with defendant. Since the beginning of January 2014, the relationship has been characterized by defendant's repeated assaults against the complaining witness in addition to an

---

§ 7555a. By its oral response, the Court did not acknowledge that those findings were enacted in response to the opinion in *Madison*, as became clear on later review. However, defendant's proffer of additional witnesses was insufficiently supported by mere citation to the findings in § 7555a. Those findings purport to rebut the holding in *Madison* that "review de novo," as originally provided by 13 V.S.A. § 7556(d), did not entitle appellants to a full evidentiary hearing. While the subsequent amendments to § 7555a and § 7556(d) arguably limit the scope of the extensive analysis in *Madison*, no subsequent case has ever reached that conclusion. Significant questions regarding separation of powers persist as to whether *Madison* remains good law, since its analysis was grounded in part on constitutional interpretation. Thus, a claim that the holding no longer applies would require a much deeper assessment than defendant has made here, since counsel admitted being unfamiliar with the ruling. Furthermore, V.R.A.P. 9 has never been modified in response to the 1996 legislative changes following *Madison*. Defendant was therefore required by V.R.A.P. 9(b)(1)(F) to alert the Court and the State by memorandum that he intended to offer and support a claim to a full evidentiary hearing without regard to the prior record, in derogation of *Madison*. The failure to file the required memorandum justifies the Court's reliance on *Madison* to limit its review to the evidence established at the weight of the evidence hearing.

atmosphere dominated by defendant's controlling behavior. The dynamics between the couple include chronic substance abuse, a factor which is highly explanatory of defendant's apparent lack of ability to control his impulse to violence. Defendant has admitted he has regularly abused alcohol and that alcoholism has had a harmful impact on his life. However, he has denied every allegation of assaultive behavior, despite strong objective evidence which taints the entirety of his testimony.

¶ 6. In January, defendant precipitated an intemperate argument during which he displayed typical suspicion as to the complaining witness's activities and associates, and demanded that she give him access to her cell phone so he could inspect it. During the argument, defendant grasped the complaining witness by the throat and applied strangling pressure to the point of causing her to have difficulty breathing. Defendant stated that he wanted to kill the complaining witness, and would have punched her if their small son was not present in the apartment. This incident followed an earlier event in January described by the complaining witness as the first time defendant had become violent with her. That event began with an argument over defendant's intrusive behavior regarding her phone, continued due to her displeasure that he continued to "take shots" (referring to alcohol), and eventually became a dispute regarding care of their child. At one point, defendant wrestled the child from the complaining witness and threw the child on the bed. Then he choked her, described by her as what would become his standard method of control, although on this first instance she denied that it was to the point of causing any interference with her breathing.

¶ 7. As a result of these assaults, the complaining witness obtained an order of relief from abuse. Defendant appeared at the final hearing and stipulated to a six month order. The order precluded any contact with the complaining witness, and provided for only supervised visitation with their child. When the order had been in place for approximately one month, the complaining witness agreed to resume her relationship with defendant, including granting him parent-child contact without supervision. However, she took no steps to vacate the abuse prevention order, which remained in place until it expired by its own terms in July 2014. In the intervening months, defendant committed countless violations of the order simply by having regular contact with the complaining witness and their child. Further, after a short period during which defendant and the complaining witness attempted abstinence from alcohol, they reengaged in substance abuse, and defendant began anew his abusive treatment of the complaining witness, including resumption of controlling behavior, use of demeaning, hostile and threatening language, and the use of physical force, especially regular incidents of choking. By the complaining witness's recollection, defendant administered choking to her on a weekly basis.

¶ 8. On August 22, 2014 while defendant was under the influence of both alcohol and marijuana, the complaining witness attempted to get into bed next to him, believing he was sleeping. After her knee pressed into him inadvertently, defendant responded with a violent punch to the complaining witness's face. Photographs taken on August 24 showed widespread bruising around her right eye socket, as well as spreading reddened areas in the white of that eye consistent with broken blood vessels. On August 23, as the complaining witness was attempting to leave, defendant prevented her by grabbing her arms and pushing her around. He called her a whore and threatened to punch her. Photographs taken on August 24 showed bruising to the complaining witness's arms.

¶ 9. The complaining witness obtained a temporary order of relief from abuse which was made final on August 28, 2014, and defendant acknowledged receipt of it on that day. The order restrained defendant from having any contact with the complaining witness. Nevertheless defendant called the complaining witness from a restricted number at 11:46 a.m. on September 3, and the complaining witness answered because she believed it was a call regarding the investigation of her charges against defendant. Instead, she recognized the voice of the caller as defendant's. He pleaded with her to help get him out of trouble and avoid jail. She told him he was not supposed to be contacting her and hung up. Later the same day, he called again, but the complaining witness recognized defendant's cell phone number on her caller ID screen and did not answer. As a result of these contacts, defendant was arrested and held without bail.

¶ 10. Defendant testified and denied any assaultive behavior in January. He claimed to have no recollection of the incident on August 22 resulting in bruises and injuries to the complaining witness's face and eye. He denied any threatening behavior on August 23. He denied making the call from a restricted number to plead with the complaining witness to help him. He claimed that any later call from his cell phone had to have been the result of inadvertence.

¶ 11. However, defendant's credibility is badly tainted. The graphic nature of the complaining witness's injuries from being punched represents strong evidence, and it is coupled with the testimony of her mother that the complaining witness was in the bedroom with defendant just before her mother witnessed the injuries. Similarly, defendant's counsel's argument that the evidence is completely consistent with an act akin to unconscious sleepwalking strains rationality, just as the complaining witness expressed when asked about that possibility on cross-examination.

¶ 12. The sole issue on appeal is whether any set of conditions of release will reasonably prevent defendant's threat of physical violence to any person. De novo review of a challenged conclusion requires a justice to reach "an independent decision based on the record." *Madison*, 163 Vt. at 393, 659 A.2d at 126. The findings clearly and convincingly show that defendant poses a substantial threat of physical violence to the complaining witness, which cannot reasonably be prevented by conditions of release.

¶ 13. The complaining witness's testimony supports the existence of a lengthening dysfunctional relationship, increasingly marked by substance abuse and related domineering and violent behavior perpetrated by defendant. It is apparent that defendant paid little heed to his continuous violation of the abuse prevention order across many months, doubtless because he believed that he could control the complaining witness so as to avoid any consequences. The resumption of regular choking as a means of discipline and punishment while the order remained in place strongly supports the State's argument that defendant has little respect for judicial authority.

¶ 14. Notwithstanding the State's argument on these grounds for denial of bail at the time of defendant's arraignment on August 25, he was released on conditions pending the weight of the evidence hearing. Defendant should have had every incentive to abide by conditions to refrain from any contact with the complaining witness until that hearing, since it was predictable that his conditions of release would likely be revoked if he violated them. Yet, either because he is confident in his ability to manipulate the complaining witness, or simply does not respect limits on his behavior represented by orders from the court, defendant bra-

zenly contacted the complaining witness twice. He has attempted to minimize these acts by denying that they occurred, or denying that if the second call occurred it was anything but inadvertence, and finally, by arguing that whatever was said was not of a threatening nature. Defendant misses the point. As is so often the case in relationships involving chronic threats intermixed with assaults, after a time, the contact itself, regardless of any overtly threatening content, represents terrorizing behavior — particularly when it is done against an explicit order prohibiting *any* contact.

¶ 15. Against this background of controlling behavior perpetrated while under an abuse prevention order, culminating in defendant's recent vicious assault against the complaining witness — which he either denied, or pretends must have occurred in his sleep — offers of supervision by relatives and friends, no matter how earnest, afford inadequate protection against further danger to the complaining witness. Defendant's short-lived abstinence from alcohol, imposed as a result of his incarceration, also offers little assurance that he can maintain his sobriety if released, especially since he was unable to do so while under the prior relief from abuse order. Defendant's ill-advised efforts to contact the complaining witness, after being issued another relief from abuse order and conditions of release, strongly contradict the claim that he will conform his behavior to a judge's order. The Court cannot conclude that any conditions will safeguard the complaining witness against defendant's impulse to control her, which has been so resistant to judicial restraint up until now.

¶ 16. For the reasons stated herein, defendant shall continue to be held without bail pursuant to 13 V.S.A. § 7553a.

*Affirmed.*

Motion to reconsider denied October 20, 2014.